UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** *ex rel.* **KWAME RAOUL, Attorney General** of the State of Illinois, and *ex rel.* **ROBERT BERLIN, State's Attorney for DuPage County, Illinois,** | Case No. 1:18-cv-08010 |
| | Hon. John Z. Lee |
| Plaintiff, | |
| v. | |
| **STERIGENICS U.S., LLC,** | |
| Defendant. | |

### DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Sterigenics U.S., LLC ("Sterigenics"), by and through its counsel, hereby submits this Supplemental Memorandum in Support of its Memorandum In Opposition to Plaintiff's Motion to Remand. This memorandum addresses the Court's February 15, 2019 order, asking the parties to address "whether the doctrine of complete preemption applies and, if so, the effect of the doctrine on this case." (Dkt. 44.)

The doctrine of complete preemption does not apply to this case because Sterigenics is not arguing that the Clean Air Act *completely* preempts state law. Even so, however, the Clean Air Act has extensive reach. *See* Defs. Remand Opp., Dkt 35 at 1 ("The CAA … 'establishes a complex and comprehensive regulatory system to reduce air pollution nationwide.'") (quoting *Sierra Club v. E.P.A.*, 311 F.3d 853, 854 (7th Cir. 2002)). As a result, Plaintiff's case arises under federal law because this case, as pleaded by Plaintiff, cannot be resolved without this Court having to decide important questions of federal law under the Clean Air Act. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); Defs. Remand Opp.,

Dkt. 35 at 5–8 ("A federal court is best positioned to determine whether Plaintiff can disrupt the carefully crafted federal emissions regulatory scheme….").

Federal questions are presented on the face of Plaintiff's Complaint without regard to complete preemption. As detailed in Sterigenics' response in opposition to remand, Plaintiff's Complaint necessarily raises federal questions under the Clean Air Act. Defs. Remand Opp., Dkt. 35 at 9. Plaintiff's Complaint is explicitly premised on Sterigenics' alleged violation of Section 201.141 of the Illinois Pollution Control Board Air Regulations, 35 Ill. Adm. Code 201.141. *See* Compl., Dkt 1, at PageID #:31, 33 ("By causing, threatening, or allowing the discharge or emission of EtO, a contaminant, into the environment so as to cause air pollution, Defendant violated Section 201.141 of the Board Air Pollution Regulations…"). Plaintiff's reliance on Section 201.141 necessarily raises federal questions for multiple reasons.

First, Plaintiff seeks to challenge the sufficiency of the United States Environmental Protection Agency's ("USEPA's") binding and specific regulations regarding ethylene oxide—which Illinois has adopted—on the basis of a generalized pollution provision. *See* Defs. Remand Opp., Dkt. 35 at 6–7. It contradicts the comprehensive regulatory scheme mandated by the Clean Air Act to allow Plaintiff to use a generalized pollution provision like Section 201.141 to elevate certain federal reports (including the findings of the Agency of Toxic Substances and Disease Registry) over the regulations specifically governing ethylene oxide that USEPA has promulgated, and that and in turn were adopted by the Illinois EPA ("IEPA").

Further, although the regulatory balance struck in the Clean Air Act permits states to maintain some independent state law causes of action in the realm of emissions, Section 201.141 is not one of them. Instead, Section 201.141 was enacted as part of the State Implementation Plan ("SIP"), which the State of Illinois is required to submit to and have approved by the

USEPA as part of the comprehensive, nationwide regulatory scheme established in the Clean Air Act. And as-detailed below, the Seventh Circuit has made clear that the SIP is itself *federal law*.

The Clean Air Act requires the USEPA to establish National Ambient Air Quality Standards ("NAAQS") that specify the maximum permissible concentration of certain pollutants in the ambient air. 42 U.S.C. § 7408–09. States, however, are responsible for ensuring compliance with the NAAQS. *Id.* § 7407 (a). Pursuant to this responsibility, each state must promulgate a SIP for each pollutant, which is reviewed by USEPA. *Id.*

The purpose of SIPs is to "provide[ ] for implementation, maintenance, and enforcement of [the NAAQS] in each air quality control region (or portion thereof) within" a state. *Id.* § 7407 (a)(1). USEPA must approve each state SIP, and has approved the Illinois SIP. 40 C.F.R. § 52.720. Further, a state may not unilaterally revise a USEPA-approved SIP, but instead must submit any revisions to USEPA for review and approval. *See* 42 U.S.C. 7413; 40 C.F.R. § 51.105. "Thus, the Congress clearly intended the final decision to be that of the [USEPA]." *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 757 (10th Cir. 1980).

The Illinois SIP is codified as 35 Illinois Administrative Code Part 106 *et seq*. Section 201.141 is part of Illinois's SIP. *See* 35 Ill. Adm. Code 201.141. In fact, Section 201.141 has been published in the Code of Federal Regulations. *See* 40 C.F.R. § 52.720 ("Prohibition of Air Pollution" approved on 5/31/72). Notably, "[o]nce it is approved by EPA, a state rule embodied in a SIP *becomes enforceable federal law*." *Indiana v. E.P.A.*, 796 F.3d 803, 806 (7th Cir. 2015) (emphasis added)[1]; *see also People v. Celotex Corp.*, 516 F. Supp. 716, 717 (C.D. Ill. 1981)

---

[1] The Seventh Circuit's binding ruling—that rules incorporated into Illinois's SIP, such as Section 201.141, are federal law—controls here. In any event, there is no disagreement between the Seventh Circuit's ruling in *Indiana* and the statement of the Sixth Circuit in *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332 (6th Cir. 1989), that a particular provision of the Michigan Environmental Protection Act was "not the sort of SIP requirement that is generally deemed federal law." *Id.* at 341. As that court explained, the Michigan law in question did "not impose the sort

3

("USEPA approved the SIP on May 31, 1972, thus making it part of the federal law"); *United States v. Congoleum Corp.*, 635 F. Supp. 174, 177 (E.D. Pa. 1986) (disagreeing with defendant's assertion that "the law in question here is the SIP and that the SIP is state law" and instead finding that the "SIP, after it is adopted by the EPA, is federal law" and can be the basis of federal question jurisdiction).

"A case arises under federal law if it appears on the face of the plaintiff's complaint either that a federal law creates the cause of action or, that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Giles v. Chicago Drum, Inc.*, 631 F. Supp. 2d 981, 983 (N.D. Ill. 2009); *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 706 (2006) ("[A] claim arises under federal law if federal law creates the cause of action."). Here, Plaintiff is seeking to enforce general provisions of Section 201.141, which have been submitted to and approved by USEPA as part of Illinois's SIP, and thus have the force of federal law. Count I of Plaintiff's Complaint, brought at the request of IEPA, alleges that "[b]y causing, threatening, or allowing the discharge or emission of [ethylene oxide], a contaminant, into the environment so as to cause air pollution, Defendant violated Section 201.141 of the Board Air Pollution Regulations, 35 Ill. Adm. Code 201.141." (Dkt. 1, PageID #:33.) And Plaintiff seeks to enforce Section 201.141 even though the Complaint concedes that Sterigenics' ethylene oxide emissions are "allowable" under its Clean Air Act Permitting Program ("CAAPP") permit, a permit that IEPA issued in accordance with federal standards adopted under the Clean Air Act. (Dkt. 1, PageID#:23–26, 33.) Thus, to adjudicate Plaintiff's claim as pleaded, this Court must necessarily resolve (1) whether Sterigenics has violated provisions of

---

of specific requirements for emissions standards or limitations that are enforceable by the CAA," but instead established procedural requirements for review in state courts. *Id.* By contrast, Plaintiff's Complaint pleads that Section 201.141 *does* impose specific requirements for emissions standards on Sterigenics.

4

Illinois's SIP, a form of federal law, based on (2) federal analyses commissioned by the USEPA, and (3) despite Sterigenics' compliance with the regulations set forth by USEPA in its NESHAP and incorporated by IEPA in its CAAPP permit. (*See* Dkt. 35 at 5-7.)

In short, the Clean Air Act plays an integral role in Plaintiff's Complaint—and is not "simply an affirmative defense" to Plaintiff's claims. (Reply ISO Remand, Dkt. 36 at 5.) As pleaded, the Complaint requires the Court to resolve substantial and disputed questions of federal law—namely the requirements of the SIP (which is itself federal law) and other requirements of the Clean Air Act, and specifically whether Plaintiff may properly challenge Sterigenics' emissions by relying on a general provision that has been incorporated into federal law, and ignoring specific federal regulatory requirements as to ethylene oxide. *See, e.g.*, *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488–89 (7th Cir. 1998) (removal proper where plaintiff's complaint required interpretation of tariff filed with Federal Communications Commission, because when "filed with a federal agency [a tariff] is the equivalent of a federal regulation"); *Mississippi ex rel. Hood v. Entergy Mississippi, Inc.*, No. 3:08CV780 HTW-LRA, 2015 WL 13448017, at *6 (S.D. Miss. Apr. 10, 2015) (federal jurisdiction existed where lawsuit brought by Mississippi Attorney General "require[d] an analysis of the Entergy Agreement," which had been submitted to and approved by the Federal Energy Regulatory Commission, and thus constituted a "tariff, which applies with the force of federal law"). Because the Illinois SIP has been filed with and approved by USEPA, and now has the force of federal law, Plaintiff's suit brought under the Illinois SIP gives rise to federal jurisdiction.

Notably, USEPA also has the authority to enforce SIP violations by issuing an administrative compliance order, issuing an administrative penalty order, or bringing a judicial civil or criminal action in federal court. 42 U.S.C. § 7413(a)(l); *see also United States v.*

5

*Luminant Generation Co., L.L.C.*, 905 F.3d 874, 879 (5th Cir. 2018) ("In response to these alleged violations, the government took legal action on August 16, 2013, filing suit in Texas federal court. The government alleged that the defendants violated, and are continuing to violate, the § 7475(a) Preconstruction requirements and Texas SIP . . . "); *United States v. Vanguard Corp.*, 701 F. Supp. 390, 391 (E.D.N.Y. 1988) (USEPA brought an action against a manufacturer of metal furniture for violating the New York SIP by using "paint that contained more than three pounds of organic solvent . . . per gallon of coating").

In fact, USEPA has frequently used Section 201.141 as the basis for federal enforcement actions. *See S.H. Bell Company Notice of Violation*, EPA-17-IL-10 (Aug. 7, 2017) (finding that S.H. Bell was "causing emissions of manganese into the air, so as, either alone or in combination with contaminants from other sources, to cause or tend to cause, Air Pollution in Illinois in violation of the Illinois SIP at 35 Ill. Admin. Code § 201.141"); *KCBX Terminals Company Notice of Violation*, EPA-5-15-IL-08 (April 28, 2015) (finding that KCBX "caused the emission of $PM_{10}$ into the air, so as, either alone or in combination with contaminants from other sources, to cause or tend to cause, air pollution in Illinois and/or to prevent the maintenance of the revised NAAQX for $PM_{10}$ in violation of the Illinois SIP at 35 Ill. Admin. Code § 201.141").

Further, once a SIP has been approved by USEPA, the Clean Air Act allows citizens to enforce the SIP's requirements in federal court. *See* 42 U.S.C. § 7604(a) (any person may commence a civil enforcement action against any party "who is alleged to have violated . . . or to be in violation of [ ] an emission standard or limitation"); *see also Atl. Terminal Urban Renewal Area Coal. v. New York City Dep't of Envtl. Prot.*, 697 F. Supp. 157, 160 (S.D.N.Y. 1988) (noting that citizens can bring federal lawsuits alleging the violation of a "specific strategy or commitment in the SIP . . . [describing] the respects in which compliance with the provision is

6

deficient") (quoting *Council of Commuter Organizations v. Metropolitan Transp. Auth.*, 683 F.2d 663, 670 (2d Cir. 1982)).

Thus, like USEPA and citizens, Plaintiff could have brought this enforcement action in federal court; instead, it chose to file in state court. Nonetheless, because Plaintiff's action clearly "arises under" federal law, this Court has federal jurisdiction. Jurisdiction is not dependent on the entity who brings the matter to federal court. Instead, as the plain language of Section 1331 states, the matter must simply "arise under" federal law in order to constitute a federal question.

Further, the applicability of Section 201.141 to Sterigenics is a deeply disputed issue in this matter. Sterigenics is explicitly permitted under CAAPP to emit the very "air pollution" of which Plaintiff complains. Despite being explicitly permitted under one federal program, Plaintiff seeks to hold Sterigenics liable for violating another federal law, Section 201.141, for doing exactly what it is permitted to do. And Plaintiff alleges this violation of federal law on the basis of statements made by federal agencies—namely, the Agency for Toxic Substances and Disease Registry and USEPA. Resolution of this federal issue necessarily depends on an interpretation and understanding of Section 201.141. For these reasons, this Court has federal question jurisdiction.

Date:   February 22, 2019                         Respectfully submitted,

By:   /s/ *Gerard D. Kelly*
     Gerard D. Kelly

     Maja C. Eaton
     meaton@sidley.com
     Gerard D. Kelly
     gkelly@sidley.com
     Elizabeth M. Chiarello
     echiarello@sidley.com
     Stephanie C. Stern
     sstern@sidley.com
     Kate Lambert
     klambert@sidley.com
     SIDLEY AUSTIN LLP
     Firm ID No. 42418
     One South Dearborn Street
     Chicago, Illinois  60603
     Telephone: (312) 853-7000
     Facsimile:  (312) 853-7036

     ***Attorneys for Sterigenics U.S., LLC***

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 22, 2019, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

    /s/ *Stephanie C. Stern*
    One of the attorneys for Defendant