IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, )<br>*ex rel.* KWAME RAOUL, )<br>Attorney General of the State of Illinois, )<br>and )<br>*ex rel.* ROBERT BERLIN, )<br>State's Attorney for DuPage County, Illinois, )<br> )<br>     Plaintiff, )<br>     v. )<br> )<br>STERIGENICS U.S., LLC, )<br> )<br> )<br>     Defendant. ) | Case No. 18 C 8010<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION & ORDER

Plaintiff People of the State of Illinois, *ex rel.* Kwame Raoul[1], Attorney General of the State of Illinois, and *ex rel.* Robert Berlin, State's Attorney for DuPage County, Illinois ("the State") brought this action seeking injunctive and other relief against Defendant Sterigenics U.S., LLC ("Sterigenics") in the Circuit Court of DuPage County, Illinois. Sterigenics filed a timely notice of removal, invoking this Court's subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. The State now moves to remand the action back to state court pursuant to 28 U.S.C. § 1447(c). For the reasons stated herein, the Court grants the State's motion and remands this case to the Circuit Court of DuPage County forthwith.

---

[1] The Court substitutes Illinois Attorney General Kwame Raoul for former Illinois Attorney General Lisa Madigan pursuant to Fed. R. Civ. P. 25(d).

## Background

Sterigenics is a Delaware limited liability company that operates a medical-equipment sterilization facility in Willowbrook, Illinois. Compl. ¶¶ 5–6, 13, ECF No. 1-1. Since January 2006, Sterigenics has operated under a permit issued by the Illinois Environmental Protection Agency ("IEPA") under its Clean Air Act Permit Program ("CAAPP"), which allows the company to emit a controlled amount of ethylene oxide gas as a part of its sterilization process. *Id.* ¶¶ 9, 16–17.

Sterigenics's most recent CAAPP permit was issued in June 2015 and incorporates the Clean Air Act National Emission Standards for Hazardous Air Pollutants ("NESHAP"). *Id.* ¶ 18. These standards require facilities to control ethylene oxide emissions in certain parts of their systems by at least 99%. *Id.* Under its permit, Sterigenics can emit up to 18.2 tons (36,400 pounds) of ethylene oxide per year. *Id.* ¶ 39. Since 2006, Sterigenics has reported much lower emissions, ranging between 4,200 and 7,340 pounds per year. *Id.* ¶ 22.

The United States Environmental Protection Agency ("USEPA") collected air samples at 26 locations near the Sterigenics facility in May 2018. *Id.* ¶ 38. It provided data—which incorporated Sterigenics's below-permit emissions levels—to the United States Department of Health and Human Services Agency for Toxic Substances and Disease Registry ("ATSDR") for evaluation. *Id.* ¶ 40. In doing so, the USEPA asked the ATSDR to "review air measurements of [ethylene oxide] and modeling results of [ethylene oxide] emissions from Sterigenics and specifically

2

answer the question: 'If modeled and measured ethylene oxide concentrations represent long term conditions, would they pose a public health problem for people living and working in Willowbrook?'" *Id.*

The ATSDR responded to the inquiry in July 2018. *Id.* ¶ 41. It concluded that "residents and workers" near the Sterigenics facilities "are exposed to elevated airborne [ethylene oxide] concentrations from facility emissions." *Id.* Although noting that it was difficult to assess the long-term public health implications of this exposure, the ATSDR concluded that—based on the maximum current ethylene oxide measurements—"*an elevated cancer risk exists* for residents and off-site workers in the Willowbrook community surrounding the Sterigenics facility." *Id.* (emphasis in original).

Sterigenics is located in a "densely populated" area, with approximately 19,271 people living within a mile of its boundary. *Id.* ¶ 34. Furthermore, 10 schools fall within a two-mile distance of the facility, as do multiple parks, government buildings, and businesses. *Id.* According to 2010 United States Census data, 3,494 children ages 5 years and younger—who are more susceptible to cancer risks from ethylene oxide than adults—live within 3 miles of the Sterigenics facility. *Id.* ¶ 36.

The State brought this lawsuit on October 30, 2018, "at the request" of the IEPA. *Id.* ¶ 2. The complaint alleges that, even with emissions "substantially lower" than the amounts permitted under Sterigenics's CAAPP permit, an elevated cancer risk exists for residents and workers in the Willowbrook community. *Id.*

3

¶ 44. Sterigenics's permit, the State contends, "allows the 'public health hazard' as found by the ATSDR in its report to continue unabated." *Id.*

The State's complaint asserts claims under Section 9(a) of the Illinois Environmental Protection Act, 415 Ill. Comp. Stat. 5/9(a), as well under a provision of the Illinois Pollution Control Board Air Pollution Regulations, 35 ILL. ADMIN. CODE § 201.141. Compl. at 15. The State also alleges a common-law claim of public nuisance. *Id.* at 16. The State seeks (1) an injunction against future violations, (2) an order setting "operational limits" or "emission limits," (3) an order requiring Sterigenics to "immediately undertake the necessary action that will result in a final and permanent abatement" of the violations, and (4) civil penalties, attorney's fees, and costs. *Id.* at 15–17.

Sterigenics filed its notice of removal on December 5, 2018, asserting that federal questions support the Court's subject-matter jurisdiction. ECF No. 1. Now before the Court is the State's motion to remand. ECF No. 28. At the Court's request, the parties filed supplemental briefs concerning the scope of federal jurisdiction. ECF Nos. 45, 46.

## Legal Standard

"'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" *United States v. Wahi*, 850 F.3d 296, 299 (7th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). When a plaintiff files a

civil action in state court, the defendant may remove the action to federal court as long as the federal court would have had jurisdiction to hear the case at the time the plaintiff originally filed it. 28 U.S.C. § 1441(a); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). A defendant seeking removal bears the burden of establishing federal jurisdiction. *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352–53 (7th Cir. 2017); *Schur*, 577 F.3d at 758 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). If a federal court lacks jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c); *Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011).

Courts "interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe*, 985 F.2d at 911. Accordingly, "any doubts about the propriety of removing a particular action should be resolved against allowing removal." *Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 715 (7th Cir. 2000); *accord Schur*, 577 F.3d at 758.

A case arises under federal law if either (1) federal law creates the cause of action or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *See Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007); *Giles v. Chi. Drum, Inc.*, 631 F. Supp. 2d 981, 983–84 (N.D. Ill. 2009). In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the Supreme Court explained that a "substantial question of federal law" exists if (1) there is a substantial and "actually disputed" federal issue, and

5

(2) the exercise of federal jurisdiction will not disturb the "congressionally approved balance of federal and state judicial responsibilities." 545 U.S. 308, 314 (2005).

In either case, the existence of a federal question must be plain from the face of the plaintiff's "well-pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). That there may be federal *defenses* to the complaint is of no import, if the complaint relies exclusively on state law. *See id.* at 392–93; *Chi. Tribune Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012). That said, a plaintiff may not strategically avoid federal jurisdiction by engaging in "artful pleading"; in other words, "[a] plaintiff may not frame his action under state law and omit federal questions that are essential to recovery." *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992).

## Analysis

Sterigenics argues primarily that the State's complaint raises substantial and disputed federal issues concerning the relationship of Illinois's environmental laws and regulations to the federal Clean Air Act ("CAA"), 42 U.S.C. §§ 7401, *et seq*. Additionally, Sterigenics contends, federal law creates at least one cause of action in the complaint due to the USEPA's incorporation of Illinois's air-pollution regulations as a part of its State Implementation Plan ("SIP"). The State, for its part, responds that its complaint raises issues under only state environmental laws and regulations, and that any concerns about standards under the CAA amount to federal defenses that do not support removal.

6

## I. Disputed Federal Issues: Clean Air Act

The CAA directs the USEPA to identify air pollutants and set national ambient air quality standards for each pollutant. 42 U.S.C. §§ 7408, 7409. In turn, the CAA recognizes that air pollution and control is the "primary responsibility of States and local governments." *Id.* § 7401(a)(3). Accordingly, the CAA requires states to adopt SIPs, which must provide for "implementation, maintenance, and enforcement" of air quality standards. *Id.* § 7410(a)(1).

Each SIP must include, among other things, emission limitations and control measures to ensure compliance with the national ambient air quality standards. *Id.* § 7410(a)(2)(A). Once a SIP is approved by the USEPA, it is subject to federal enforcement under the CAA and is codified as a federal regulation. *See id.* § 7413; 40 C.F.R. § 52.720(c) (incorporating Illinois's SIP by reference).

Beyond the implementation of a SIP, states maintain their authority to regulate air pollution, including by adopting or enforcing (1) "any standard or limitation respecting emissions of air pollutants" or (2) "any requirement respecting control or abatement of air pollution," as long as it is not "less stringent than the standard or limitation" under the CAA or a SIP. 42 U.S.C. § 7416.[2]

---

[2] This provision, commonly referred to as a "savings clause" states, in its entirety: "Except as otherwise provided in sections 1857c-10(c), (e), and (f) (as in effect before August 7, 1977), 7543, 7545(c)(4), and 7573 of this title (preempting certain State regulation of moving sources) nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that if an emission standard or limitation is in effect under an applicable

7

Illinois has enacted a SIP that incorporates the national ambient air quality standards, codified at 35 ILL. ADMIN. CODE Part 106 *et seq*. Sterigenics's CAAPP permit was issued under the SIP. In this case, however, the State does not contend that Sterigenics has violated the SIP; rather, it raises claims under two provisions of state environmental law, as well as under the common law of public nuisance. In particular, the State cites to a provision of the Illinois Environmental Protection Act, 415 Ill. Comp. Stat. 5/9(a), which prohibits any "person" from causing, threatening, or allowing the "discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the [Pollution Control Board] under this Act."[3] The State also

---

implementation plan or under section 7411 or section 7412 of this title, such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section." 42 U.S.C. § 7416. A similar provision also appears in the CAA's citizen-suit provision, which provides: "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from—(1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or (2) bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality, against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution . . . ." *Id*. § 7604(e).

[3]   Elsewhere in the Act, "contaminant" is defined as "any solid, liquid, or gaseous matter, any odor, or any form of energy, from whatever source." 415 Ill. Comp. Stat. 5/3.165. In turn, "air pollution" is defined as "the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be

invokes 35 ILL. ADMIN. CODE § 201.141, which mirrors 5/9(a) and adds a prohibition against actions that "prevent the attainment or maintenance of any applicable ambient air quality standard." 35 ILL. ADMIN. CODE § 201.141.

As Sterigenics sees it, the State's complaint raises substantial issues under the CAA, because Sterigenics is currently in compliance with the emissions regulations set by the Act and by its CAAPP permit. Sterigenics argues that, by citing to "vague, nonspecific" state environmental standards, the State is attempting to "implement new emissions standards via judicial means" in contravention of the CAA. Def.'s Resp. Mot. Remand at 1, 12, ECF No. 35. It contends that, if the State is allowed to do this, Sterigenics will be subjected to conflicting and confusing standards with respect to ethylene oxide emissions.

The Court might be inclined to take Sterigenics's position if the State were suing it for failing to meet its CAAPP permit obligations, and thus, national air quality standards. As previously discussed, Illinois's SIP is enforceable in federal court and has the force of federal law. *See Indiana v. EPA*, 796 F.3d 803, 806 (7th Cir. 2015) ("Once it is approved by [USEPA], a state rule embodied in a SIP becomes enforceable federal law."). But that is not the basis of the State's claims.

Rather, the State contends that Sterigenics's ethylene oxide emissions violate state law prohibiting air pollution generally, and it asks the state court to enjoin

---

injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property." *Id.* 5/3.115.

9

Sterigenics's pollution *despite* its compliance with the CAA and the SIP. As Sterigenics acknowledges, the State essentially is seeking to impose more stringent emissions standards through the development of state laws and standards outside the context of the CAA. This does not implicate the meaning and scope of federal standards, because Sterigenics is currently meeting those standards. Rather, the scope of *state* law—which may set more stringent standards under the CAA, *see* 42 U.S.C. § 7416—will be the focus of the suit.

Similar lawsuits have been found not to implicate federal law—at least not on the face of the well-pleaded complaint. Most recently, in *Keltner v. SunCoke Energy, Inc.*, a court in the Southern District of Illinois concluded that a suit alleging nuisance, trespass, and negligence did not support federal subject-matter jurisdiction, even though the defendants had permits under the CAA. No. 3:14-cv-01374, 2015 WL 3400234, *4–5 (S.D. Ill. May 26, 2015). In so doing, the court cited to *Bell v. Cheswick Generating Station*, in which the Third Circuit similarly held that the CAA did not provide a basis to assert federal jurisdiction by way of preemption over the plaintiff's common-law nuisance and trespass action. 734 F.3d 188, 196–97 (3d Cir. 2013). Similarly, the Sixth Circuit has held that a lawsuit brought under general provisions of the Michigan Environmental Protection Act did not raise a federal claim, despite the fact that Michigan had also enacted a SIP. *See Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 340–44 (6th Cir. 1989).

For its part, Sterigenics relies upon the Fourth Circuit's decision in *North Carolina ex rel. Cooper v. Tennessee Valley Authority*, 615 F.3d 291 (4th Cir. 2010). But that case did not address the issue of federal subject-matter jurisdiction and, thus, is readily distinguishable.

Here, the CAA is material only to the extent that it might provide Sterigenics with a federal defense under the doctrine of preemption. That is, Sterigenics may seek to avoid liability, arguing that the State is improperly attempting to alter the CAA's emissions standards by imposing stricter requirements, or that the creation of alternative state standards will result in unpredictable enforcement contrary to the CAA's goals. Unfortunately for Sterigenics, a defense to state claims predicated on federal law cannot form the basis of removal. *See Caterpillar*, 482 U.S. at 393 ("[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.") (emphasis in original); *Her Majesty the Queen*, 874 F.2d at 338–42; *People of the State of Ill. v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 577–78 (7th Cir. 1982); *Keltner*, 2015 WL 3400234, at *1–4.

A preemption defense *can* support removal if a federal statute "wholly displaces the state law cause of action through complete pre-emption . . . [such that] a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*,

11

539 U.S. 1, 8 (2003). But Sterigenics disclaims the applicability of complete preemption. *See* Def.'s Suppl. Mem. at 1, ECF No. 45. And even if it did not, the Court would be inclined to agree with those courts that have concluded that the CAA does *not* completely preempt the field of air-pollution regulation. *See, e.g.*, *Bell*, 734 F.3d at 193–97; *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 488 F.3d 112, 134–36 (2d Cir. 2007); *Her Majesty the Queen*, 874 F.2d at 342–44; *Keltner*, 2015 WL 3400234, at *3–4; *Cerny v. Marathon Oil Corp.*, Civ. A. No. SA-13-CA-562-XR, 2013 WL 5560483, at *8 (W.D. Tex. Oct. 7, 2013).

Sterigenics's federal jurisdiction argument is not salvaged by its reference to the studies supporting the State's suit. Sterigenics points out that the State's complaint relies on a report by the ATSDR, a federal agency. According to Sterigenics, the State's complaint "only arose because of federal action" in the form of the ATSDR report and the USEPA's ongoing air-quality monitoring. Def.'s Resp. Mot. Remand at 6. Accordingly, it contends, any lawsuit concerning those federal actions will "necessarily raise[ ] the question of the meaning and weight of those federal agencies' analyses and conclusions." *Id.* But the ATSDR report and the USEPA's testing are merely pieces of evidence to support the State's claims. Sterigenics asserts that there are questions about the reliability of the ATSDR report; but this concern, too, is a federal defense at most. The existence of federal activities involving Sterigenics does not change the fact that resolution of the State's claims requires only a determination of whether Sterigenics has caused or contributed to

12

"air pollution" under the Illinois Environmental Protection Act and the Pollution Control Board regulations, as well as whether it has created a public nuisance under Illinois common law.

## II. Federal Cause of Action: Enforcement of Illinois's SIP

In its initial briefing on the motion to remand, Sterigenics did not argue that the State had raised a claim created by federal law; rather, it focused solely on the existence of disputed federal questions pursuant to *Grable,* 545 U.S. 308. But in its supplemental briefing, Sterigenics posits that, in fact, the State has raised a claim created by a federal law. In support, it points to the State's invocation of 35 ILL. ADMIN. CODE § 201.141, the Pollution Control Board's general prohibition of air pollution. That regulation, Sterigenics points out, is part of Illinois's SIP and is incorporated into the Code of Federal Regulations. Accordingly, Sterigenics argues, any cause of action under § 201.141 is *federal* in nature.[4] The State, in response, contends that the SIP is enforceable as state law, not federal law.

The State's characterization of the SIP is not quite right. As previously described, SIPs are incorporated into federal regulations and can be enforced by the USEPA or citizen lawsuits. *See* 42 U.S.C. § 7413; 40 C.F.R. § 52.720(c); *see also*

---

[4] The State argues that this contention is outside the scope of the Court's order requesting supplemental briefing, and thus should be disregarded. The point is well taken, as the Court asked the parties to address only the doctrine of complete preemption in their supplemental briefs. *See* Order of Feb. 15, 2019, ECF No. 44. But subject-matter jurisdiction is not waivable by either party, and the Court has an independent obligation to consider its jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Accordingly, for the sake of completeness, the Court considers Sterigenics's new argument.

13

*Indiana,* 796 F.3d at 806. Certainly, if the State or even a private citizen wished to bring an action to enforce Sterigenics's SIP, it could do so under the CAA in a federal court. *See* 42 U.S.C. § 7604(a).

Still, the Court concludes that the State's claim under § 201.141 does not arise under federal law. Unlike the more specific emissions standards set out in other provisions of Illinois's SIP, the broad prohibition in § 201.141 cannot be seen as an "emission standard or limitation"; nor does it create a permitting scheme *per se*. *See McEvoy v. IEI Barges Servs., Inc.*, No. 06 C 50080, 2009 WL 10700262, at *2–5 (N.D. Ill. Sept. 11, 2009) (concluding that § 201.141's lack of specific standards means that it is not capable of private enforcement through the CAA's citizen-suit provision). In this way, § 201.141 is more similar to the Michigan law at issue in *Her Majesty the Queen*, which did "not impose the sort of specific requirements for emission standards or limitations that are enforceable by the CAA" and therefore was "not the sort of SIP requirement that is generally deemed federal law." 874 F.2d at 341. Although the State can presumably enforce § 201.141 in an action in its own courts, Sterigenics does not explain how the State could raise such a claim as a matter of federal law.

Because the Court concludes that the State's complaint raises issues only of state law under the Illinois Environmental Protection Act, the Pollution Control Board regulations, and Illinois common law, remand is necessary. There are no disputed federal issues on the face of the complaint, and—as there is no way the State could have brought its claims in federal court to begin with—the Court cannot say

14

that its complaint was drafted artfully to avoid federal jurisdiction.

## III. Attorney's Fees and Costs

As a final note, the State asks that the Court award it the reasonable attorneys' fees and costs it incurred in bringing this motion. Under 28 U.S.C. § 1447(c), a remand order "may" require payment of attorney's fees. The Supreme Court has clarified that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Further, "[i]n applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

The Court concludes that this is not the type of case in which an award of fees is warranted. Rather, Sterigenics made reasonable arguments in support of its contention that the CAA is implicated by the State's invocation of separate, but related, environmental laws. This is particularly true given that the Pollution Control Board regulations are incorporated within the SIP, parts of which are enforceable in federal court. Accordingly, the Court finds that Sterigenics's attempt to remove this matter to federal court was not so objectively unreasonable as to require payment of the State's fees and costs.

## **Conclusion**

For reasons stated herein, the Court grants the State's motion to remand and remands this case to the Circuit Court of DuPage County, Illinois, forthwith. Civil case terminated.

**IT IS SO ORDERED.**  ENTERED   3/11/19

_____
**John Z. Lee**
**United States District Judge**